TERRY J. CARE (NSBN 4560)
KRISTEN T. GALLAGHER (NSBN 9561)
McDONALD CARANO WILSON LLP
2300 West Sahara Avenue, Suite 1000
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
Facsimile: (702) 873-9966
tcare@mcdonaldcarano.com
tgallagher@mcdonaldcarano.com

FREDERICK S. GOLD (*pro hac vice motion forthcoming*)
JILL M. O'TOOLE (*pro hac vice motion forthcoming*)
SHIPMAN & GOODWIN LLP
300 Atlantic Street
Stamford, Connecticut 06901
Telephone: (203) 324-8100
Facsimile: (203) 324-8199
fgold@goodwin.com
jotoole@goodwin.com

*Attorneys for Defendant Atlantic-Pacific Capital, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| WYNN RESORTS, LIMITED, a Nevada corporation, | CASE NO.: |
| Plaintiff, | |
| vs. | |
| ATLANTIC-PACIFIC CAPITAL, INC., a Connecticut corporation, | **DEFENDANT'S NOTICE OF REMOVAL** |
| Defendant. | |

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Atlantic-Pacific Capital, Inc. ("APC") respectfully files this Notice of Removal to remove the civil action captioned <u>Wynn Resorts, Limited v. Atlantic-Pacific Capital, Inc.</u>, Case No. A-10-616392-B, filed in the Eighth Judicial District Court for the State of Nevada in and for the County of Clark, to the United States District Court for the District of Nevada. APC states that the grounds for removal are as follows:

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE• NO. 10, SUITE 1000 • LAS VEGAS, NEVADA
PHONE (702)873-4100 • FAX (702) 873-9966

1      1.     Removal is appropriate pursuant to 28 U.S.C. § 1441(a), because this Court has
2   original jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C.
3   § 1332(a)(1).  There is complete diversity of citizenship between the parties, because, according
4   to the Complaint, Plaintiff Wynn Resorts, Limited ("Wynn") is a corporation organized under
5   the laws of the State of Nevada, with its principal place of business in Las Vegas, Nevada (see
6   Compl. ¶ 1), and because Defendant APC is a corporation organized under the laws of the State
7   of Delaware, with its principal place of business in Greenwich, Connecticut.  Additionally, as
8   set forth in the Complaint, this matter arises from a dispute between the parties pursuant to
9   which APC has filed a demand for arbitration seeking in excess of $32 million (see Compl.
10  ¶ 15), and therefore the matter in controversy exceeds the sum of $75,000, exclusive of interest
11  and costs.

12     2.     On or about May 3, 2010, APC filed a demand for arbitration against Wynn
13  under the JAMS Streamlined Arbitration Rules and Procedures, pursuant to a contract between
14  them dated March 30, 2009 in which the parties agreed to submit to binding arbitration any
15  disputes, controversies, or claims arising from or relating to their agreement.

16     3.     On or about May 10, 2010, Wynn commenced an action by filing a Complaint
17  for damages and declaratory relief in the Eighth Judicial District Court for the State of Nevada
18  in and for the County of Clark, Case No. A-10-616392-B, captioned Wynn Resorts, Limited v.
19  Atlantic-Pacific Capital, Inc. (the "State Court Action").

20     4.     As set forth in the Complaint filed in the State Court Action, Wynn seeks a
21  declaration that:   (a) an entity known as "Wynn Macau, Limited" is separate from the
22  agreement between Wynn and APC, and that APC is not entitled to compensation under the
23  parties' Agreement for matters relating to Wynn Macau, Limited (Compl. ¶¶ 17-21); and
24  (b) that the parties' dispute is not subject to arbitration (id. ¶¶ 22-28).  Wynn also seeks an
25  injunction to stay the arbitration commenced by APC.  (Id. ¶¶ 29-33.)

26     5.     APC disputes the substantive allegations of the Complaint, and instead APC's
27  position in sum and substance is that the parties' dispute is fully arbitrable.  Accordingly, APC
28  intends to promptly request that this Court compel arbitration of this matter.

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE • NO. 10, SUITE 1000 • LAS VEGAS, NEVADA
PHONE (702) 873-4100 • FAX (702) 873-9966

DEFENDANT'S NOTICE OF REMOVAL

1476016v1

6.    On May 12, 2010, counsel for APC obtained a copy of the Complaint filed in the State Court Action.

7.    To the best of APC's knowledge, APC has not yet been served with the Summons and Complaint.

8.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391, 1441(a), and 1446(a)-(b), and Local Rule IA 8-1, because the State Court Action was filed and is pending in the Eighth Judicial District Court, Clark County, Nevada, which is within this judicial district.

9.    This Notice of Removal is timely under 28 U.S.C. § 1446(b), because APC is filing this Notice of Removal within thirty (30) days of May 12, 2010, which is when APC obtained a copy of the Complaint from the state court file.

10.    A true and correct copy of the process, pleadings, and orders filed with the Eighth Judicial District Court, Clark County, Nevada in this action, to the best of APC's knowledge, are attached hereto as Exhibit 1.  Although APC received a courtesy copy of these filings, APC has not yet formally been served with any of them.

11.    Written notification of the filing of this Defendant's Notice of Removal is being served on Plaintiff's counsel on this date.

12.    A true and correct copy of this Defendant's Notice of Removal will be filed on this day with the Eighth Judicial District Court, Clark County, Nevada.

13.    A true and correct copy of Defendant's Notification of Removal to Federal Court being filed with the Eighth Judicial District Court, Clark County, Nevada is attached hereto as Exhibit 2.

14.    This Defendant's Notice of Removal is executed and filed pursuant to Fed. R. Civ. P. 11.

. . .

. . .

. . .

. . .

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE • NO. 10, SUITE 1000 • LAS VEGAS, NEVADA
PHONE (702)873-4100 • FAX (702) 873-9966

**DEFENDANT'S NOTICE OF REMOVAL**

1476016v1

1    WHEREFORE, Defendant APC removes this civil action from the Eighth Judicial

2  District Court, Clark County, Nevada to this Court.

3    RESPECTFULLY SUBMITTED this 17th day of May, 2010.

4                                    McDONALD CARANO WILSON LLP

5

6                          By: /s/ Terry J. Care

7                              TERRY J. CARE (NSBN 4560)
                               KRISTEN T. GALLAGHER (NSBN 9561)
8                              2300 West Sahara Avenue, Suite 1000
                               Las Vegas, Nevada 89102
9

10                             and

11                             FREDERICK S. GOLD (*pro hac vice motion
                               forthcoming*)
12                             JILL M. O'TOOLE (*pro hac vice motion
                               forthcoming*)
13                             SHIPMAN & GOODWIN LLP
                               300 Atlantic Street
14                             Stamford, Connecticut 06901

15
                               *Attorneys for Defendant*
16                             *Atlantic-Pacific Capital, Inc.*

17

18

19

20

21

22

23

24

25

26

27

28

*McDONALD · CARANO · WILSON LLP*
*2300 WEST SAHARA AVENUE · NO. 10, SUITE 1000 · LAS VEGAS, NEVADA*
*PHONE (702)873-4100 · FAX (702) 873-9966*

1476016v1

4 of 5          **DEFENDANT'S NOTICE OF REMOVAL**

1

## CERTIFICATE OF SERVICE

2    I HEREBY CERTIFY, under penalty of perjury, that I am an employee of McDonald

3    Carano Wilson LLP and that pursuant to Local Rule 5-3 on this date I caused to be

4    electronically filed, a true and correct copy of the foregoing Defendant's Notice of Removal

5    with the Clerk of the Court using the CM/ECF system, and that I caused a copy of the same to

6    be duly deposited in the United States mail, postage prepaid, addressed to the following, with a

7    courtesy copy to be sent via email to the following:

8    James J. Pisanelli, Esq.
     Debra L. Spinelli, Esq.
9    Pisanelli Bice PLLC
     3883 Howard Hughes Parkway, Suite 800
10   Las Vegas, Nevada 89169

11   Randy M. Mastro, Esq.
     Adam H. Offenhartz, Esq.
12   David J. Kerstein, Esq.
     Gibson, Dunn & Crutcher LLP
13   200 Park Avenue, 47th Floor
     New York, New York  10166-0193

14

15   *Attorneys for Plaintiff Wynn Resorts, Limited*

16

17   _____
     An employee of McDonald Carano Wilson LLP

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT'S NOTICE OF REMOVAL**

1476016v1

# EXHIBIT 1

# EXHIBIT 1

Electronically Filed
05/10/2010 09:35:55 PM

**CLERK OF THE COURT**

1  **COMPB**
James J. Pisanelli, Esq., Bar No. 4027
2  jjp@pisanellibice.com
Debra L. Spinelli, Esq., Bar No. 9695
3  dls@pisanellibice.com
**PISANELLI BICE** PLLC
4  3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169
5  Telephone:  702.214.2100
Facsimile:   702.214.2101
6
7  Attorneys for Wynn Resorts, Limited

8                         **DISTRICT COURT**

9                    **CLARK COUNTY, NEVADA**

10  WYNN RESORTS, LIMITED, a Nevada         Case No.: A - 1 0 - 6 1 6 3 9 2 - B
    corporation,                           Dept. No.:  X I
11
12                       Plaintiff,         **COMPLAINT FOR DAMAGES AND**
                                           **DECLARATORY RELIEF**
13  v.
                                           **(Request for Business Court Assignment**
14  ATLANTIC-PACIFIC CAPITAL, INC., a      **Pursuant to EDCR 1.61(a)(2)(iii))**
    Connecticut corporation,
15                                          **(Exempt from Arbitration – Declaratory**
                                           **Relief Requested)**
16                       Defendant.

17

18        Plaintiff Wynn Resorts, Limited ("Wynn Resorts"), by and through its undersigned

19  counsel, hereby requests that the above-captioned matter be assigned to the Business Docket

20  pursuant to EDCR 1.6(a) because it is a case that arises from the sale of assets of stock/assets of a

21  business (mainly, the Wynn Macau IPO), and states as its Complaint against Defendant

22  Atlantic-Pacific Capital, Inc. ("APC") as follows:

23                              **PARTIES**

24        1.     Wynn Resorts is and was at all times relevant hereto a Nevada corporation with its

25  principal place of business in Las Vegas, Nevada.

26        2.     Wynn Resorts is informed and believes, and thereon alleges, that APC is and was

27  at all times relevant hereto a limited liability company organized under the laws of the State of

28

                                            1

1   Connecticut, with its principal place of business in Connecticut, and doing business in Las Vegas,

2   Nevada.

3       3.      APC has caused acts or suits to occur in Clark County, Nevada, which subjects

4   APC to the jurisdiction of this Court.

5                               **GENERAL ALLEGATIONS**

6       4.      Wynn Resorts and APC entered into an agreement on March 30, 2008, whereby

7   APC was engaged to raise equity capital for an investment vehicle sponsored by Wynn

8   (the "Agreement").

9       5.      In the Agreement, Wynn Resorts and APC expressed their shared goal: "that the

10   Investment Vehicle will be formed and capitalized with at least $1.5 billion of equity capital on

11   terms acceptable to Wynn for the purpose of acquiring, directly or indirectly, interests in gaming

12   and hospitality assets or related securities."

13       6.      Wynn Resorts did not contract with APC to involve APC in Wynn Resorts'

14   ongoing projects or interests.  Wynn Resorts contracted with APC only for the purpose of funding

15   new projects and opportunities in the gaming and hospitality industry.

16       7.      In 2004, well before the Agreement with APC, Wynn Resorts formed

17   Wynn Macau, Limited.  Wynn Macau, Limited, together with its subsidiaries, is a developer,

18   owner and operator of destination casino gaming and entertainment resort facilities in Macau.

19       8.      Wynn Macau, Limited developed and constructed Wynn Macau between 2004 and

20   2006, and opened the doors to Wynn Macau in 2006, almost three years before the Agreement

21   and without any assistance or involvement by APC whatsoever.

22       9.      As an existing (rather than a to-be-formed or to-be-acquired) gaming and

23   hospitality asset, Wynn Macau and Wynn Macau, Limited are beyond the scope of the Agreement

24   and unaffected thereby.  Any and all financing related, directly or indirectly, to Wynn Macau is

25   unaffected and unrelated to the Agreement.

26       10.     APC never presented Wynn Resorts with any investors and/or capital for

27   Wynn Macau, Limited.

28

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169
702.214.2100

2

11.    Wynn Resorts never placed any investors or capital raised by APC with or in Wynn Macau, Limited.

12.    In or around September 2009, and unrelated to APC, Wynn Resorts announced the details of its IPO wherein Wynn Resorts announced its intention to sell approximately 25% of its existing interest in Wynn Macau, Limited.  Wynn Resorts intended to sell its interest without any involvement or assistance from APC.

13.    In or around early Fall 2009, APC ceased any and all marketing efforts to raise equity for the Investment Vehicle actually contemplated in the Agreement.  No money was ever raised by APC or by any else for this Investment Vehicle.

14.    A such, on or about December 18, 2009, Wynn Resorts provided written notice that it was terminating the Agreement pursuant to Section 4 thereof.

15.    Despite having nothing whatsoever to do with the Wynn Macau IPO, and despite having sat silent while Wynn Resorts raised its own capital without APC's involvement, APC made a demand upon Wynn Resorts claiming compensation from Wynn Resorts in the sum of 2% of all of the capital raised by Wynn Resorts by the IPO.  APC seeks compensation that it did not earn in the sum of approximately $32 million.  APC waited almost six months to bring this purported demand.   Wynn has flatly rejected APC's demand because APC has not earned nor it is entitled to any fee whatsoever for the capital raised by way of the Wynn Macau IPO.

16.    APC purported to initiate a Demand for Arbitration before JAMS on May 3, 2010, under the JAMS Streamlined Arbitration Rules and Procedure.  The Streamlined Rules are usually used for disputes of less than $250,000.  Without relief from this Court, Wynn Resorts could be forced to arbitrate a dispute that is not subject to arbitration under rules wholly inappropriate for this dispute.

## FIRST CAUSE OF ACTION

### (Declaratory Relief)

17.    Wynn Resorts repeats and realleges the allegations set forth in Paragraphs 1 through 16 above as though fully set forth herein.

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169
702.214.2100

3

18.     An actual justiciable controversy has arisen with respect to whether Wynn Macau and/or Wynn Macau, Limited is entirely separate from the Agreement between Wynn Resorts and APC and whether APC is entitled to any compensation therefore.

19.     Wynn Resorts contends that Wynn Macau and/or Wynn Macau, Limited are entirely separate from the Agreement entered into by and between Wynn Resorts and APC, and that any claim for compensation or otherwise by APC related to Wynn Macau and/or Wynn Macau, Limited is not governed by the Agreement and that APC is entitled to no compensation related to Wynn Macau.

20.     APC has demanded payment from Wynn Resorts related to Wynn Macau's IPO. Thus, there presently exists a ripe case and controversy for which the parties are in need of declarations from the Court to resolve their respective rights.

21.     As a result of APC's acts and omissions, Wynn Resorts has been compelled to hire the services of an attorney for the protection of its interests.

## SECOND CAUSE OF ACTION

### (Declaratory Relief)

22.     Wynn Resorts repeats and realleges the allegations set forth in Paragraphs 1 through 21 above as though fully set forth herein.

23.     APC has crafted a frivolous argument to seek fees under an agreement entirely unrelated to Wynn Macau.  APC has claimed that its demand is governed by an arbitration clause in the Agreement.

24.     The parties did not intend that disputes between them unrelated to the subject matter of the Agreement would be subject to arbitration of any sort, let alone subject to arbitration under the Streamlined Arbitration Rules and Procedure which usually govern dispute of less than $250,000.00.  Because the dispute is outside of the Agreement, the dispute is not arbitrable under the Agreement

25.     Indeed, the parties intended for only a small subset of potential disputes that might arise between them to be subject to arbitration.  Disputes in which a party seeks a breach of

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169
702.214.2100

4

1 | contract claim for over $32 million arising from funds raised through no effort of the claimant is
2 | not within that small subset of claims subject to arbitration.

3 |      26.    An actual justiciable controversy has arisen with respect to the following issues:

4 |             (a)     Whether APC's frivolous demand for compensation is subject to
5 | arbitration; and

6 |             (b)     If subject to arbitration, whether JAMS' Streamlined Arbitration Rules and
7 | Procedures govern the dispute.

8 |      27.    Wynn Resorts contends that all of the above must be answered in the negative.
9 | Wynn Resorts is informed and believes that APC believes the opposite result would be proper.
10 | Thus, there presently exists a ripe case and controversy for which the parties are in need of
11 | declarations from the Court to resolve their respective rights.

12 |      28.    As a result of APC's acts and omissions, Wynn Resorts has been compelled to hire
13 | the services of an attorney for the protection of its interests.

### THIRD CAUSE OF ACTION

### (Injunctive Relief)

16 |      29.    Wynn Resorts repeats and realleges the allegations set forth in Paragraphs 1
17 | through 28 above as though fully set forth herein.

18 |      30.    As discussed herein, the dispute APC alleges is not subject to arbitration, but APC
19 | nonetheless purported to commence an arbitration with JAMS under the terms of an agreement
20 | entirely inapplicable to the subject matter in dispute.

21 |      31.    Wynn Resorts is entitled to an injunction staying the arbitration and enjoining APC
22 | from proceeding with the arbitration it commenced against Wynn Resorts on or about May 3,
23 | 2010.

24 |      32.    Unless APC's actions are restrained and the arbitration proceeding stayed and/or
25 | enjoined, Wynn Resorts will be irreparably harmed by being forced to arbitrate the dispute as
26 | sought by APC.

27 |      33.    As a result of APC's acts and omissions, Wynn Resorts has been compelled to hire
28 | the services of an attorney for the immediate protection of its interests.

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169
702.214.2100

5

1    WHEREFORE, Wynn Resorts prays for judgment as follows:

2        1.      On the First Cause of Action, for a declaration that Wynn Macau is entirely

3    separate from the Agreement entered into by and between Wynn Resorts and APC, and that APC

4    is entitled to no compensation related to Wynn Macau.

5        2.      On the Second Cause of Action, for a declaration that APC's frivolous demand for

6    compensation is not subject to arbitration and not subject to JAMS' Streamlined Arbitration Rules

7    and Procedures.

8        3.      On the Third Cause of Action, for an order staying the arbitration APC has sought

9    to initiate with JAMS and/or enjoining the arbitration in its entirety.

10       4.      For an award of reasonable costs and attorneys' fees.

11       5.      For prejudgment and post-judgment interest on the foregoing sums at the highest

12   rate permitted by law.

13       6.      And for any additional relief this Court deems to be just and proper on the

14   evidence presented at trial.

15       DATED this 10th day of May, 2010.

16                              PISANELLI BICE

17

18                              By:   ___ /s/ James J. Pisanelli ___
                                      James J. Pisanelli, Esq., Bar No. 4027
19                                    Debra L. Spinelli, Esq., Bar No. 9695
                                      3883 Howard Hughes Parkway, Suite 800
20                                    Las Vegas, Nevada 89169

21                              Attorneys for Wynn Resorts, Limited

22

23

24

25

26

27

28

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169
702.214.2100

6

1  OST
   James J. Pisanelli, Esq., Bar No. 4027

**FILED**

MAY 17 2010

2  jjp@pisanellibice.com
   Debra L. Spinelli, Esq., Bar No. 9695

3  dls@pisanellibice.com
   PISANELLI BICE PLLC

*Alan J. Johnson*
CLERK OF COURT

4  3883 Howard Hughes Parkway, Suite 800
   Las Vegas, Nevada 89169

5  Telephone:  702.214.2100
   Facsimile:  702.214.2101

6

7  Randy M. Mastro, Esq. (*pro hac vice motion forthcoming*)
   Adam H. Offenhartz, Esq. (*pro hac vice motion forthcoming*)
   David J. Kerstein, Esq. (*pro hac vice motion forthcoming*)

8  GIBSON, DUNN & CRUTCHER LLP
   200 Park Avenue, 47th Floor

9  New York, New York  10166-0193
   Telephone: 212.351.4000

10 Facsimile:  212.351.5272

11 Attorneys for Wynn Resorts, Limited

12                        **DISTRICT COURT**

13                   **CLARK COUNTY, NEVADA**

14 WYNN RESORTS, LIMITED, a Nevada          Case No.:     A-10-616392-B
   corporation,                             Dept. No.:    XI
15
                          Plaintiff,
16 v.                                        **WYNN RESORTS, LIMITED'S**
                                             ***EX PARTE* APPLICATION FOR ORDER**
17 ATLANTIC-PACIFIC CAPITAL, INC., a         **SHORTENING TIME REGARDING ITS**
   Connecticut corporation,                  **EMERGENCY MOTION FOR STAY OF**
                                             **ARBITRATION PROCEEDINGS**
18
                          Defendant.
19

20

21      Plaintiff Wynn Resorts, Limited ("Wynn"), by and through its undersigned counsel,

22 hereby moves this Court for an order shortening the time to be heard on its Emergency Motion for

23 Stay of Arbitration Proceedings ("Emergency Motion") filed on May 17, 2010.   The instant

24 Motion is  based upon E.D.C.R 2.26, the Affidavit of James J. Pisanelli, Esq., Wynn's Emergency

25

26

27

28

                                          1

1    Motion, the Declaration of Matt Maddox filed on May 17, 2010, the exhibits attached thereto, and

2    any oral arguments of counsel that this Court may choose to consider.

3            DATED this 16th day of May, 2010.

4                                              PISANELLI BICE

5                                              By: _____

6                                                   James J. Pisanelli, Esq., Bar No. 4027
7                                                   Debra L. Spinelli, Esq., Bar No. 9695
                                                    3883 Howard Hughes Parkway, Suite 800
8                                                   Las Vegas, Nevada 89169

9                                                   and

10                                                  Randy M. Mastro, Esq.
                                                    Adam H. Offenhartz, Esq.
11                                                  David J. Kerstein, Esq.
                                                    GIBSON, DUNN & CRUTCHER LLP
12                                                  200 Park Avenue, 47th Floor
                                                    New York, New York  10166-0193

13                                                  Attorneys for Wynn Resorts, Limited

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1

## ORDER SHORTENING TIME

2          Good cause appearing, it is hereby ordered that the foregoing **WYNN RESORTS,**

3   **LIMITED'S EMERGENCY MOTION FOR STAY OF ARBITRATION PROCEEDINGS**

4   shall be heard on shortened time on the _20_ day of _May_, 2010, at the hour of

5   _9_ o'clock _a_.m. in Department XI of the Eighth Judicial District Court.

6          DATED this _17_ day of May, 2010.

7

8                                      ELIZABETH GOFF GONZALEZ

9                                      DISTRICT COURT JUDGE

10  Respectfully submitted:

11  PISANELLI BICE PLLC

12

13  By: _____

14          James J. Pisanelli, Esq., Bar No. 4027
            Debra L. Spinelli, Esq., Bar No. 9695

15          3883 Howard Hughes Parkway, Suite 800
            Las Vegas, Nevada 89169

16

17  Attorneys for Plaintiff Wynn Resorts, Limited

18

19

20

21

22

23

24

25

26

27

28

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

3

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

## AFFIDAVIT OF JAMES J. PISANELLI, ESQ.

STATE OF NEVADA    )
                  ) ss:
COUNTY OF CLARK    )

I, James J. Pisanelli, Esq., being first duly sworn, depose and state as follows:

1.     I am a partner with Pisanelli Bice PLLC, counsel for Wynn Resorts, Limited ("Wynn") in the above captioned case. I make this affidavit in support of Wynn's *Ex Parte* Application For Order Shortening Time Regarding Its Emergency Motion For Stay Of Arbitration Proceedings (the "Emergency Motion"). The facts stated herein are based on my personal knowledge, unless stated upon information and belief.

2.     This action centers around Wynn's IPO of its interest in, what was at the time, a wholly owned subsidiary, Wynn Macau, SA ("Wynn Macau"), and APC's claim that it is owed fees related to that IPO. However, APC had nothing whatsoever to do with Wynn Macau or its IPO.

3.     APC purported to initiate a Demand for Arbitration before J.A.M.S. on May 3, 2010, under the J.A.M.S. Streamlined Arbitration Rules and Procedure, to seek compensation related to the IPO (the "Arbitration"). Importantly, the Streamlined Rules are usually used for disputes of less than $250,000, and APC seeks an amount much larger.

4.     APC claims that it has authority to pursue the Arbitration under an agreement that APC and Wynn entered into on March 30, 2009, three years after the Wynn Macau Casino opened. Via the Agreement, APC agreed to become Wynn's "exclusive global placement agent" in connection with raising equity capital for a new Wynn Investment Vehicle that had the explicit "purpose of acquiring, directly or indirectly, interests in gaming and hospitality assets or related securities," specifically the distressed Nevada properties. As an existing (rather than a to-be-formed or to-be-acquired) and already wholly owned gaming and hospitality asset, the Wynn Macau Casino was simply unrelated to, and unaffected by, the Agreement. Simply, the Agreement concerned capital APC was to raise for specific *new* projects, not the then existing

1    Wynn Macau.  A copy of the Agreement, dated March 30, 2009, is attached as Exhibit B to the

2    Declaration of Matt Maddox, filed on May 17, 2010.

3          5.       Currently, APC's improper arbitration is progressing quickly.  On May 11, 2010,

4    Wynn received a letter from J.A.M.S. requesting response to proposed arbitrators by May 21,

5    2010 or, if no response is made, deeming any objections waived.  A copy of the Commencement

6    of Arbitration Letter, dated May 11, 2010, is attached as Exhibit E to the Declaration of Matt

7    Maddox, filed on May 17, 2010.

8          6.       A stay of arbitration is necessary so that Wynn is not forced to defend itself against

9    a multi-million dollar claim not subject to arbitration in an arbitration conducted in a manner

10    deemed appropriate for the equivalent of small claims disputes.  Additionally, without relief from

11    this Court, Wynn would be forced to suffer an adverse ruling for failing to participate, which may

12    be difficult or impossible to overturn.

13          7.       In light of the above, there is a good faith basis to grant this application for Wynn's

14    Emergency Motion to be heard on shortened time.  Wynn would be irreparably harmed if the

15    Arbitration proceeds without Wynn's participation.

16          FURTHER AFFIANT SAYETH NAUGHT.

17          DATED this 16th day of May, 2010.

18

19                     JAMES J. PISANELLI

20

21

22    SUBSCRIBED and SWORN to before me
      this ____ day of May, 2010.

23

24    Notary Public

25

26           KIMBERLY PEETS
      NOTARY PUBLIC - STATE OF NEVADA
      COUNTY OF CLARK

27          APPT No 93-5173-1
      MY APPT EXPIRES MARCH 07, 2014

28

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

1  **OST**
James J. Pisanelli, Esq., Bar No. 4027
2  jjp@pisanellibice.com
Debra L. Spinelli, Esq., Bar No. 9695
3  dls@pisanellibice.com
PISANELLI BICE PLLC
4  3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada  89169
5  Telephone:  702.214.2100
Facsimile:  702.214.2101
6
Randy M. Mastro, Esq. (*pro hac vice motion forthcoming*)
7  Adam H. Offenhartz, Esq. (*pro hac vice motion forthcoming*)
David J. Kerstein, Esq. (*pro hac vice motion forthcoming*)
8  GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
9  New York, New York  10166-0193
Telephone:  212.351.4000
10  Facsimile:  212.351.5272

11  Attorneys for Wynn Resorts, Limited

12                          **DISTRICT COURT**

13                     **CLARK COUNTY, NEVADA**

14  WYNN RESORTS, LIMITED, a Nevada        Case No.:     A-10-616392-B
    corporation,                           Dept. No.:    XI
15
                        Plaintiff,
16                                         **WYNN RESORTS, LIMITED'S**
    v.                                     ***EX PARTE* APPLICATION FOR ORDER**
17                                         **SHORTENING TIME REGARDING ITS**
    ATLANTIC-PACIFIC CAPITAL, INC., a      **EMERGENCY MOTION FOR STAY OF**
    Connecticut corporation,               **ARBITRATION PROCEEDINGS**
18
                        Defendant.
19

20

21          Plaintiff Wynn Resorts, Limited ("Wynn"), by and through its undersigned counsel,

22  hereby moves this Court for an order shortening the time to be heard on its Emergency Motion for

23  Stay of Arbitration Proceedings ("Emergency Motion") filed on May 17, 2010.    The instant

24  Motion is  based upon E.D.C.R 2.26, the Affidavit of James J. Pisanelli, Esq., Wynn's Emergency

25

26

27

28

                                            1

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

1 | Motion, the Declaration of Matt Maddox filed on May 17, 2010, the exhibits attached thereto, and

2 | any oral arguments of counsel that this Court may choose to consider.

3 |     DATED this 16th day of May, 2010.

4 |                                              PISANELLI BICE

5 |                                              By: _____

6 |                                                  James J. Pisanelli, Esq., Bar No. 4027
                                                     Debra L. Spinelli, Esq., Bar No. 9695
7 |                                                  3883 Howard Hughes Parkway, Suite 800
                                                     Las Vegas, Nevada 89169
8 |
9 |                                                  and

10 |                                                 Randy M. Mastro, Esq.
                                                     Adam H. Offenhartz, Esq.
11 |                                                 David J. Kerstein, Esq.
                                                     GIBSON, DUNN & CRUTCHER LLP
12 |                                                 200 Park Avenue, 47th Floor
                                                     New York, New York  10166-0193
13 |
                                                     Attorneys for Wynn Resorts, Limited
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

1

## ORDER SHORTENING TIME

2      Good cause appearing, it is hereby ordered that the foregoing **WYNN RESORTS,**

3   **LIMITED'S EMERGENCY MOTION FOR STAY OF ARBITRATION PROCEEDINGS**

4   shall be heard on shortened time on the ____ day of _____, 2010, at the hour of

5   _____ o'clock ____.m. in Department XI of the Eighth Judicial District Court.

6      DATED this ___ day of May, 2010.

7

8                                    _____

9                                    DISTRICT COURT JUDGE

10  Respectfully submitted:

11  PISANELLI BICE PLLC

12

13  By: _____

14      James J. Pisanelli, Esq., Bar No. 4027
        Debra L. Spinelli, Esq., Bar No. 9695
15      3883 Howard Hughes Parkway, Suite 800
        Las Vegas, Nevada 89169
16
    Attorneys for Plaintiff Wynn Resorts, Limited
17

18

19

20

21

22

23

24

25

26

27

28

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

**AFFIDAVIT OF JAMES J. PISANELLI, ESQ.**

STATE OF NEVADA    )
                   ) ss:
COUNTY OF CLARK    )

I, James J. Pisanelli, Esq., being first duly sworn, depose and state as follows:

1.     I am a partner with Pisanelli Bice PLLC, counsel for Wynn Resorts, Limited ("Wynn") in the above captioned case.  I make this affidavit in support of Wynn's *Ex Parte* Application For Order Shortening Time Regarding Its Emergency Motion For Stay Of Arbitration Proceedings (the "Emergency Motion").  The facts stated herein are based on my personal knowledge, unless stated upon information and belief.

2.     This action centers around Wynn's IPO of its interest in, what was at the time, a wholly owned subsidiary, Wynn Macau, SA ("Wynn Macau"), and APC's claim that it is owed fees related to that IPO.  However, APC had nothing whatsoever to do with Wynn Macau or its IPO.

3.     APC purported to initiate a Demand for Arbitration before J.A.M.S. on May 3, 2010, under the J.A.M.S. Streamlined Arbitration Rules and Procedure, to seek compensation related to the IPO (the "Arbitration").  Importantly, the Streamlined Rules are usually used for disputes of less than $250,000, and APC seeks an amount much larger.

4.     APC claims that it has authority to pursue the Arbitration under an agreement that APC and Wynn entered into on March 30, 2009, three years after the Wynn Macau Casino opened.  Via the Agreement, APC agreed to become Wynn's "exclusive global placement agent" in connection with raising equity capital for a new Wynn Investment Vehicle that had the explicit "purpose of acquiring, directly or indirectly, interests in gaming and hospitality assets or related securities," specifically the distressed Nevada properties.  As an existing (rather than a to-be-formed or to-be-acquired) and already wholly owned gaming and hospitality asset, the Wynn Macau Casino was simply unrelated to, and unaffected by, the Agreement.  Simply, the Agreement concerned capital APC was to raise for specific *new* projects, not the then existing

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

1  Wynn Macau.  A copy of the Agreement, dated March 30, 2009, is attached as Exhibit B to the

2  Declaration of Matt Maddox, filed on May 17, 2010.

3         5.      Currently, APC's improper arbitration is progressing quickly.  On May 11, 2010,

4  Wynn received a letter from J.A.M.S. requesting response to proposed arbitrators by May 21,

5  2010 or, if no response is made, deeming any objections waived.  A copy of the Commencement

6  of Arbitration Letter, dated May 11, 2010, is attached as Exhibit E to the Declaration of Matt

7  Maddox, filed on May 17, 2010.

8         6.      A stay of arbitration is necessary so that Wynn is not forced to defend itself against

9  a multi-million dollar claim not subject to arbitration in an arbitration conducted in a manner

10 deemed appropriate for the equivalent of small claims disputes.  Additionally, without relief from

11 this Court, Wynn would be forced to suffer an adverse ruling for failing to participate, which may

12 be difficult or impossible to overturn.

13        7.      In light of the above, there is a good faith basis to grant this application for Wynn's

14 Emergency Motion to be heard on shortened time.  Wynn would be irreparably harmed if the

15 Arbitration proceeds without Wynn's participation.

16        FURTHER AFFIANT SAYETH NAUGHT.

17        DATED this 16th day of May, 2010.

18

19                                                    _____
                                                     JAMES J. PISANELLI
20

21 SUBSCRIBED and SWORN to before me

22 this _____ day of May, 2010.

23 _____

24 Notary Public

25

26        KIMBERLY PEETS
          NOTARY PUBLIC - STATE OF NEVADA
          COUNTY OF CLARK
27        APPT No 93-5173-1
          MY APPT EXPIRES MARCH 07, 2014

28

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

5

1  **MSTY**
   James J. Pisanelli, Esq., Bar No. 4027
2  jjp@pisanellibice.com
   Debra L. Spinelli, Esq., Bar No. 9695
3  dls@pisanellibice.com
   PISANELLI BICE PLLC
4  3883 Howard Hughes Parkway, Suite 800
   Las Vegas, Nevada 89169
5  Telephone:  702.214.2100
   Facsimile:  702.214.2101
6
   Randy M. Mastro, Esq. (*pro hac vice motion forthcoming*)
7  Adam H. Offenhartz, Esq. (*pro hac vice motion forthcoming*)
   David J. Kerstein, Esq. (*pro hac vice motion forthcoming*)
8  GIBSON, DUNN & CRUTCHER LLP
   200 Park Avenue, 47th Floor
9  New York, New York  10166-0193
   Telephone:  212.351.4000
10 Facsimile:  212.351.5272

11 Attorneys for Wynn Resorts, Limited

12                     **DISTRICT COURT**

13                 **CLARK COUNTY, NEVADA**

14 WYNN RESORTS, LIMITED, a Nevada          Case No.:   A-10-616392-B
   corporation,                             Dept. No.:  XI
15
                          Plaintiff,
16
   v.                                       **WYNN RESORTS, LIMITED'S**
17                                          **EMERGENCY MOTION FOR STAY OF**
   ATLANTIC-PACIFIC CAPITAL, INC., a        **ARBITRATION PROCEEDINGS**
18 Connecticut corporation,

19                          Defendant.

20

21         Plaintiff Wynn Resorts, Limited ("Wynn"), by and through its undersigned counsel,

22 hereby moves this Court for an order staying the arbitration (the "Arbitration") commenced by

23 Defendant Atlantic-Pacific Capital, Inc. ("APC"). The pending arbitration identifies a purported

24 claim for breach of a contract (the "Agreement") entered into by Wynn and APC to raise equity

25 capital to pursue additional gaming and hospitality industry assets at a time of distressed market

26 conditions. If anything is clear from the face of the Agreement, it is that it had nothing whatsoever

27 to do with Wynn's *existing* interests and assets. APC's claim is not arbitrable because it is wholly

28 unrelated to the Agreement in that it seeks compensation for financing efforts of *other* companies

                                             1

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169
702.214.2100

1   relating to Wynn's *existing* properties. In fact, the Agreement's arbitration provision was intended

2   to cover only narrow calculation disputes arising under the Agreement's fees and expenses

3   provision. Accordingly, the arbitration provision omits any language referring to breach or

4   termination of the Agreement. Defendant's claim is well beyond those that the parties agreed to

5   submit to arbitration. Moreover, the "streamlined" arbitration rules and procedures requested by

6   Defendant apply only to disputes under $250,000 – an amount hundreds of times smaller than the

7   millions demanded by Defendant.

8         This Motion is based upon NRS 38.206 et seq., the accompanying Memorandum of Points

9   and Authorities, the Declaration and supporting evidence attached hereto, and any oral arguments

10  of counsel that the Court may choose to consider.

11        DATED this 16th day of May, 2010.

12                              PISANELLI BICE

13

14                              By: ___/s/ James J. Pisanelli_____
                                    James J. Pisanelli, Esq., Bar No. 4027
15                                  Debra L. Spinelli, Esq., Bar No. 9695
                                    3883 Howard Hughes Parkway, Suite 800
16                                  Las Vegas, Nevada 89169

17                                  and

18                                  Randy M. Mastro, Esq.
                                    Adam H. Offenhartz, Esq.
19                                  David J. Kerstein, Esq.
                                    GIBSON, DUNN & CRUTCHER LLP
20                                  200 Park Avenue, 47th Floor
                                    New York, New York  10166-0193

21                              Attorneys for Wynn Resorts, Limited

22

23

24

25

26

27

28

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169
702.214.2100

                                        2

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169
702.214.2100

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

At the heart of this dispute is Defendant Atlantic-Pacific Capital, Inc.'s ("APC")'s effort to obtain a windfall from Wynn Resorts, Limited ("Wynn") through a contractual arbitration mechanism not applicable to its sweeping, far-fetched claim.  APC seeks compensation for the hard work of others – hard work APC never performed any part of,  hard work that commenced before Wynn and APC ever contracted, and hard work that Wynn and APC never contemplated would be any part of the one deal between them.  In fact, the sole contract between Wynn and APC provided that APC would be compensated <u>only</u> for a specific new investment vehicle, and <u>only</u> if that new vehicle actually acquired new assets or deployed any capital.  This never happened, so APC is entitled to nothing whatsoever here.

Put simply, APC has brought a meritless arbitration seeking to coerce a payout from Wynn by threatening it with a huge demand (approximately $32 million).  Wynn intends to expose this baseless claim for what it is – a shakedown – and, at the appropriate time, will seek sanctions and attorneys' fees.

The instant Motion seeks to stop APC's transparent effort to cram its bogus claim into the limited arbitration clause of a wholly separate agreement.  The parties agreed only to arbitrate fee and reimbursement calculation disputes that fall within the Agreement.  Indeed, the streamlined rules, which APC seeks to use here, were intended only to apply to a subset of such arbitrable disputes, calculation disputes under $250,000, under the Agreement.  Wynn now asks this Court to stay APC's rogue arbitration and resolve this unrelated, multi-million dollar claim in the forum where it belongs – this Court.

**II.  BACKGROUND**

On or about March 30, 2009, Defendant APC entered into the Agreement with Wynn to raise equity capital for a new "Investment Vehicle" that was to be sponsored by Wynn.  The parties agreed that the Investment Vehicle would "be formed and capitalized with at least $1.5 billion of equity capital" for the specific "purpose of acquiring, directly or indirectly, interests in gaming and hospitality assets or related securities" – namely, to acquire three

3

1  particular Nevada properties that were experiencing intense distress resulting from the collapse of

2  the United States financial market.  Nowhere in that Agreement, or anywhere else, did Wynn

3  agree to involve APC in Wynn's preexisting, ongoing projects, interests, and assets in the gaming

4  and hospitality industry.  Nor did APC ever solicit investments for any such other pre-existing

5  and ongoing Wynn projects.

6         The Agreement contained a number of complex provisions, including sections directing

7  that APC's fees would be calculated as a percentage of capital "deployed".  That percentage could

8  vary depending on the circumstances – for example, a 1% success fee if aggregate investments in

9  the Investment Vehicle equaled $1.5 billion, a 2% cash placement fee for investment in the

10  Investment Vehicle, or a 1% fee for acquisitions by a Subsequent Investment Vehicle.  Similarly,

11  reimbursement and interest under the Agreement could be subject to a number of factors.  *See*

12  Declaration of Matt Maddox, dated May 16, 2010 (hereinafter "Maddox Decl.") ¶ 7 (Exhibit B –

13  the Agreement, Section 2).  Realizing that disagreements might arise regarding how to correctly

14  calculate the components of any fee or reimbursement that might be earned, the parties included

15  an arbitration clause for resolving that limited category of disputes.  *See* Agreement, Section 5(g).

16  The parties further agreed to use the J.A.M.S. Streamlined Rules for a further subset of disputes

17  that would be arbitrated where less than $250,000 was at stake.  *See id.*

18         In December 2009, Wynn formally terminated the Agreement as of right because, among

19  other reasons, APC's "marketing [had] ceased several months ago on any potential investment."

20  *See* Maddox Decl. ¶ 11 (Exhibit D – Termination Letter).  Indeed, the Agreement expressly

21  permitted Wynn to terminate for that very reason – namely, if APC, "at any time, ceases to

22  actively market the investments to potential investors."  *See* Agreement, Section 4.

23         Now, five months after this formal termination, APC seeks to shoehorn into the ambit of

24  the Agreement's limited arbitration clause a claim wholly unrelated to the Agreement.

25  Specifically, APC has purported to commence an arbitration in which it claims that Wynn

26  "breached" the Agreement when it sold (as opposed to purchased, as contemplated by the

27  Agreement) 25% of its interest (the "IPO") in Wynn Macau, SA ("Wynn Macau").  Notably,

28  Wynn Macau was, at the time, a wholly owned Wynn subsidiary that had been in existence since

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169
702.214.2100

4

1   2002 (seven years prior to the Agreement), and which already owned, opened, and operated

2   gaming and hospitality assets known as the Wynn Macau Resort and Casino (the "Wynn Macau

3   Casino").

4       It is this Court's province to determine whether there is an arbitrable dispute.  Here, there

5   is none.  Moreover, forcing a party to arbitrate a nonarbitrable dispute constitutes irreparable

6   injury.  And that is exactly what Wynn would suffer if it is forced to arbitrate the question of

7   whether the Wynn Macau IPO harmed APC in some manner, especially under the J.A.M.S.

8   Streamlined Rules.  Accordingly, this Court should issue a stay of the arbitration that APC

9   purported to initiate against Wynn, and proceed with the resolution of Wynn's claims for

10  declaratory relief in this Court.

11  **III.   SUMMARY OF FACTS AND PROCEDURAL HISTORY**

12      **A.    <u>Wynn Creates Wynn Macau Years Before The Agreement.</u>**

13      Wynn was awarded and signed a concession to operate casinos in Macau, China in 2002.

14  Wynn formed Wynn Macau to hold the concession and to develop, own, and operate the

15  destination casino gaming and entertainment resort facilities in Macau. In 2006, after four years

16  of development and construction, Wynn Macau opened the Wynn Macau Casino for business.

17  *See* Maddox Decl. ¶ 3.

18      Beginning in 2007, after extensive discussion and consideration, Wynn Macau retained

19  various professionals to assist with the IPO, including JP Morgan and UBS Securities.  APC was

20  not involved in any way.  In September, 2009, Wynn Macau announced the details of its IPO

21  wherein it expressed Wynn's intention to sell approximately 25% of its existing interest in Wynn

22  Macau. *See* Maddox Decl. ¶ 4 (Exhibit A – Offering Prospectus).

23      In October, 2009, the IPO was completed in accordance with the many complex rules and

24  regulations of the Hong Kong exchange. The Wynn Macau IPO was concluded without any

25  discussion or participation of APC as the Agreement had nothing whatsoever to do with any

26  existing Wynn business.  Indeed, under the stringent rules of the Hong Kong exchange, any

27  involvement by APC would have had to be disclosed in the Offering Prospectus. And, as is

28

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169
702.214.2100

1    evident from the Offering Prospectus, APC played no role in the IPO, in sharp contrast to the

2    various banks listed in Prospectus. *See id.*

3        **B.**    <u>**The Parties Enter Into The Agreement For The Express Purpose Of Raising**</u>

4            <u>**Capital For A New Investment Vehicle.**</u>

5          Wynn was introduced to APC in early 2009 while Wynn was contemplating opportunities

6    that had presented themselves in the United States as a result of the financial collapse of United

7    States capital markets in the fall of 2008.  This effort was completely separate and apart from any

8    of Wynn's operations in China.  Wynn and APC discussed acquisitions of distressed debt, equity

9    and assets of United States gaming companies that were then experiencing financial trouble as a

10   result of the collapse. *See* Maddox Decl. ¶ 5.

11         APC worked with Wynn to develop a plan that focused on the potential acquisition of

12   three Nevada properties.  The Nevada properties were in particular distress as they had capital

13   demands, debt maturities, and an ongoing business dispute. *See* Maddox Decl. ¶ 6.

14         On March 30, 2009, three years *after* the Wynn Macau Casino opened, APC and Wynn

15   entered into the Agreement, whereby APC agreed to become Wynn's "exclusive global placement

16   agent" in connection with raising equity capital for a new Wynn Investment Vehicle that had the

17   explicit "purpose of *acquiring*, directly or indirectly, interests in gaming and hospitality assets or

18   related securities," specifically the distressed Nevada properties.  Maddox Decl. ¶ 7 (Exhibit B –

19   the Agreement) (emphasis added).  As an existing and already wholly owned gaming and

20   hospitality asset, the Wynn Macau Casino was simply unrelated to, and unaffected by, the

21   Agreement.  The parties at no point discussed including preexisting assets, like the Wynn Macau

22   Casino, within the ambit of the Agreement. *See* Maddox Decl. ¶ 7.  The Agreement was drafted

23   principally by APC and executed on APC letterhead. *See generally* the Agreement.

24         The Agreement discussed the fee APC could earn by soliciting investment under two, and

25   only two, circumstances: through the Investment Vehicle (for which a fee of 2% could be earned ,

26   under certain circumstances) and through the Subsequent Investment Vehicle (for which a fee of

27   1% could be earned, under certain circumstances). *See* Agreement, Section 2(d).  The parties

28   understood, as the Agreement makes clear, that APC would not be paid a fee on any investments

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169
702.214.2100

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169
702.214.2100

1   made beyond the two specified Investment Vehicles, nor would APC be paid a fee for

2   investments made in previously existing Wynn assets.  APC would only be paid fees with respect

3   to any investors APC introduced to Wynn not already known to Wynn, and only if the specified

4   Investment Vehicles actually closed on an acquisition of an asset or otherwise "deployed" its

5   capital.  As an existing and already wholly owned gaming and hospitality asset, the Wynn Macau

6   Casino was simply unrelated to, and unaffected by, the Agreement.  *See* Maddox Decl. ¶ 7.

7           Additionally, the Agreement contained, among its numerous provisions, a

8   "Miscellaneous" provision.  Agreement, Section 5.  Section 5(g) outlined the parties'

9   understanding regarding how disputes related to the Agreement's numerous fee and expense

10  provisions would be resolved.  *See id.*  As the Agreement shows, the parties intended that these

11  disputes be resolved in arbitration, and, in the case of a dispute involving an amount less than

12  $250,000, arbitration conducted pursuant to J.A.M.S.' Streamlined Rules.  Wynn has a

13  long-standing policy against arbitration for its significant commercial relationships and would

14  never have entered into an arbitration agreement with APC that covered anything more than

15  calculation disputes.  Thus, the Agreement's provision that "[a]ny dispute, controversy or claim

16  arising from or relating to this Agreement shall be submitted to and determined by binding

17  arbitration, in Las Vegas, Nevada, conducted by J.A.M.S", was intended to apply only to

18  disagreements regarding the Agreement's fee provisions as applied to the Investment Vehicles

19  contemplated by the Agreement.  No more.  Notably, Section 5(g) of the Agreement does not

20  include the J.A.M.S.' model arbitration clause language covering "breach,[or] termination" of the

21  Agreement, demonstrating the parties' mutual intent that those type of disputes were *not* to be

22  subject to arbitration, and certainly not subject to the equivalent of small claims rules.  Only if a

23  dispute concerned the subject matter of the Agreement for an amount under $250,000 would the

24  Streamlined Rules apply.

25          APC prepared marketing materials identifying the specific distressed Nevada properties.

26  *See* Maddox Decl. ¶ 8.  All discussions between Wynn, APC, and any potential investors were

27  focused on those opportunities only.  At no time were existing Wynn assets or entities included in

28  discussions with either APC or APC's investors.  *See id.*  In that regard, APC initially introduced

1  Wynn to one investor interested in investing with Wynn in the distressed Nevada properties.

2  However, such an investment never took place.  Significantly, the Nevada properties' situation

3  improved and the owner of the properties was able to raise significant capital.  Wynn ceased

4  active discussions with APC and potential investors in early summer of 2009 because the

5  sought-after opportunities were no longer available.  Notably, ownership in those properties has

6  not changed.  There was no further activity as it seemed that the market had begun to stabilize.

7  By the fall of 2009, APC had ceased all marketing efforts under the Agreement.  *See* Maddox

8  Decl. ¶ 10.

9         Wynn formally terminated the Agreement on December 18, 2009.  *See* Maddox Decl. ¶ 11

10  (Exhibit D – Termination Letter).

11      **C.**     **APC Attempts To Force Wynn To Arbitrate Its Baseless Claims Regarding**

12               **Wynn Macau After The Wynn Macau Casino Posts Record Profits.**

13         Almost five months after Wynn formally terminated the Agreement, on May 3, 2010,

14  APC commenced a "streamlined" J.A.M.S. arbitration against Wynn, claiming that it was entitled

15  to a share of the proceeds raised by Wynn Macau's unrelated IPO.  *See* Maddox Decl. ¶ 12

16  (Exhibit D – Arbitration Demand).  In essence, APC attempts to lay claim to funds acquired by a

17  different, pre-existing, and unrelated Wynn entity that already owned and operated – and thus, did

18  not need to acquire – gaming and hospitality assets.  Moreover, APC is attempting to use the

19  J.A.M.S. streamlined procedures designed, according to J.A.M.S. itself, for disputes under

20  $250,000 – a small fraction of the amount that APC alleges is at issue (over $32 million). *See id.*

21         Currently, APC's improper arbitration is progressing quickly.  On May 11, 2010, Wynn

22  received a letter from J.A.M.S. requesting response to proposed arbitrators by May 21, 2010 or, if

23  no response is made, deeming any objections waived.  *See* Maddox Decl. ¶13 (Exhibit E –

24  J.A.M.S. Letter).  A stay of arbitration is necessary so that Wynn is not forced to defend itself

25  against a multi-million dollar claim in a forum it never bargained for, and according to rules

26  appropriate only for disputes hundreds of times smaller than what APC seeks.

27

28

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169
702.214.2100

IV.     **ARGUMENT**

Wynn and APC entered into a narrow and specific agreement.  The parties included in that Agreement an arbitration provision, intending that only disputes regarding the calculation of fees for investments contemplated in the Agreement would be subject to arbitration.

As more fully discussed below, it is well-settled that it is the province of this Court to assess whether there is an arbitrable controversy.  APC should not be permitted to point to a provision in an agreement that allows for arbitration of certain disputes *related to that agreement only* and force Wynn to arbitrate all complaints and/or claims against it.  Wynn will be subjected to irreparable injury if it is forced to arbitrate a dispute that, at its inception, was not arbitrable.

A.     <u>APC's Claims Against Wynn Are Not Arbitrable.</u>

Wynn does not dispute that, on March 30, 2009, the parties signed an Agreement which, among many other things, directed the parties to arbitrate a certain limited class of disputes that may have arisen during the performance of the Agreement – such as disagreements over reimbursements or the timing of payments made under the contract.  APC now attempts to take this limited arbitration provision and shoehorn a massive claim for tens of millions of dollars based on a Wynn subsidiary that existed well before the Agreement, that already owned gaming and hospitality assets, and that has nothing to do with the parties' relationship.  Facially and objectively, Wynn's IPO is outside of the Agreement.

The arbitration provision at issue indicates that neither party intended, nor consented, to arbitrate claims like the ones APC is now asserting. Accordingly, Wynn should not be forced to forgo the basic protections of a judicial proceeding and to address APC's baseless claim in 'streamlined' arbitration. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Truck Ins. Exch. v. Swanson*, 124 Nev. 59, 189 P.3d 656, 660 (2008) (internal citation and quotation marks omitted).

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169
702.214.2100

9

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169
702.214.2100

1        ***1.        APC's claims are beyond the scope of the arbitration provision, which is limited to claims arising from the Agreement.***

2

3        The parties could have entered into an agreement to submit all disputes regardless of their

4   origin to arbitration – but they did not do so.  Instead, the parties entered into an agreement to

5   submit certain claims "arising from or relating to this Agreement" to arbitration.  The Supreme

6   Court of Nevada has made clear that, "arbitration is a matter of contract and 'a party cannot be

7   required to submit to arbitration any dispute which he has not agreed so to submit.'"  *Truck Ins.*

8   *Exch.*, 124 Nev. 59, 189 P.3d at 660 (citation omitted).  As a threshold matter, one that is well

9   within this Court's purview to decide, claims based on the sale of a fractional interest in an entity

10  unrelated to the Agreement and not covered by its terms do not arise from, nor relate, to the

11  Agreement.

12       Although courts "give the phrase 'arising out of' in an arbitration clause a broad reading,"

13  it is nevertheless well-settled that "[d]isputes that are not related – with at least some directness –

14  to performance of duties specified by the contract do not count as disputes 'arising out of' the

15  contract, and are not covered by the standard arbitration clause."  *Gedimex, S.A. v. Nidera, Inc.*,

16  290 Fed. Appx. 311, 313 (11th Cir. 2008) (quoting *Telecom Italia, SpA v. Wholesale Telecom*

17  *Corp.*, 248 F.3d 1109 (11th Cir. 2001)).  For example, the United States Court of Appeals for the

18  Ninth Circuit, in ruling that an arbitration clause providing that any "question or controversy . . .

19  concerning the business or manner to [*sic*] transacting business carried on" under the agreement

20  should be submitted to arbitration, held that, "[o]n the breach of contract claim, we find that it is

21  not arbitrable because this claim does not arise out of, nor is it in any way connected with or is it

22  related to the [ ] Agreement."  The court reached its conclusion, in part, because the defendant's

23  alleged conduct (like Wynn's conduct here) was directed at an unrelated third party.  *Cent. Mont.*

24  *Rail v. BNSF Ry.*, 285 Fed. Appx. 458, 459 (9th Cir. 2008).

25       Like the plaintiff in *BNSF*, APC's claims here are entirely premised on an unrelated third

26  party – Wynn Macau.  There is no suggestion whatsoever in the Agreement that, in addition to

27  making APC the placement agent for new Wynn investment vehicles, APC's supposed rights

28  would attach to all unrelated Wynn entities that predated the execution of the Agreement by years

1   and which already owned and operated gaming and hospitality assets.  In the words of the *BNSF*

2   court, APC's claim is not arbitrable because it "does not arise out of nor is it in any way connected

3   with or is it related to the Agreement."

4        In sum, both parties understood that the Agreement was entered into for the express

5   purpose of acquiring certain distressed assets – hence the language of the Agreement providing

6   that it was entered into for the "express purpose of acquiring, directly or indirectly, interests in

7   gaming and hospitality assets or related securities."   APC prepared marketing materials

8   exclusively related to a specific opportunity and spoke to potential investors only about that

9   specific opportunity.  There could have been no confusion, based on the language of the contract,

10  or the communications between the parties, that the Agreement pertained only to the acquisition

11  of new "gaming and hospitality assets."

12       Simply put, the activities of Wynn Macau have no bearing on, let alone direct relationship

13  to, the Agreement and are accordingly not within the scope of this limited arbitration clause.

14       ***2.   The Agreement's arbitration provision was intended only to cover disputes
         regarding the Agreement's complicated fee provisions and, accordingly, omits***

15       ***any reference to breaches of the Agreement.***

16       The Agreement's Fee and Expenses provision is notably complex, laying out different

17  payouts for a variety of different circumstances, which Wynn and APC recognized could lead to

18  disputes as the appropriate payout for any given APC brokered investment in the Investment

19  Vehicle.  The arbitration provision was designed to handle these common, technical disputes –

20  similar to a post-closing adjustment process.

21       For example, Section 2(d) states that if an investor "not known to Wynn prior to its

22  introduction by APC" invests in a Subsequent Investment Vehicle, defined by the parties as the

23  "next privately offered investment vehicle sponsored by Wynn," then APC would be paid 1% of

24  that particular Investment.  If a dispute had arisen regarding whether a particular investor in the

25  Subsequent Investment Vehicle was "not known to Wynn prior to its introduction by APC," it too

26  would have been properly resolved in Arbitration.  Section 2(c) states that APC would be paid a

27  Success Fee "in the form of a warrant convertible into one percent (1.0%) of the equity of the

28  Investment Vehicle" in the event that APC was able to secure capital commitments in the

11

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169
702.214.2100

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169
702.214.2100

1  Investment Vehicle exceeding $1.5 billion.  Clearly, this variety of possible payouts – and the

2  numerous conditions on payout – could well lead to disputes about the construction and

3  satisfaction the fee provisions and, indeed, which provision would apply to a given transaction.

4  Given the circumscribed nature of such a dispute, the parties opted for a streamlined arbitration

5  process to preserve the overall Agreement and to resolve exactly this type of relatively

6  circumscribed dispute.

7       Accordingly, the Agreement's arbitration clause mirrors the J.A.M.S. Standard

8  Commercial Arbitration Clause Naming J.A.M.S. or Another Provider ("Model Clause")

9  regarding the scope of the provision, *but pointedly omits the Model Clause's language regarding*

10  *breaches of contract.*  Both the Model Clause and the parties' clause start by stating that the

11  parties will arbitrate "[a]ny dispute, claim or controversy arising out of or relating to this

12  Agreement . . . ."  *Compare* J.A.M.S. Streamlined Rules, pp. 4 *with* Agreement Section 5(g).

13  Unlike the Agreement, however, the Model Clause includes additional issues to be submitted to

14  arbitration, stating:

15          Any dispute, claim or controversy arising out of or relating to this
        Agreement *or the breach,* termination, enforcement, interpretation
16          or validity thereof, including the determination of the scope or
        applicability of this agreement to arbitrate . . . .

17

18  J.A.M.S.' Streamlined Rules, at 4 (emphasis added).  Notably, the Model Clause's use of the word

19  "or" before "breach, termination . . ." demonstrates that the issues then listed (including

20  termination and scope of the agreement to arbitrate) are separate and additional to "[a]ny dispute,

21  claim, or controversy arising out of or relating to the agreement."

22       Wynn's and APC's decision to exclude the words "or the breach, termination, enforcement,

23  interpretation or validity thereof, including the determination of the scope or applicability of this

24  agreement to arbitrate" is significant as it exhibits the parties' intent to exclude claims like the

25  claims asserted by APC from the reach of the provision.[1]

26  _____

27      [1]    The Agreement states that it shall be "construed in accordance with the laws of the
State of New York." Agreement, Section 5(f). Under New York law, it is well-settled that, "[i]f
28  the language of the arbitration agreement is considered ambiguous, it is to be construed most
strongly against the drafter and favorably to the non-drafter." *Davis Alarms, Inc. v. Aftar,* 2007

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169
702.214.2100

3.     ***The Parties Intended To Use The J.A.M.S. Streamlined Rules Only For A Small Subset Of Arbitrable Disputes.***

The parties included a reference to the J.A.M.S. Streamlined Rules in the arbitration provision: "*[e]xcept as otherwise provided herein*, said arbitration shall be conducted pursuant to and in accordance with the Streamlined Arbitration Rules and Procedure."   Section 5(g) (emphasis added).  However, the prefatory language, "[e]xcept as otherwise provided herein" – provides a limitation on the applicability of these rules.  In other words, the Streamlined Rules do not apply to all arbitrable disputes.

The Streamlined Rules were designed by J.A.M.S. to resolve disputes "when the amount in controversy is likely to be less than $250,000."  The Comprehensive Arbitration Rules, on the other hand, are appropriate "when the amount in controversy is likely to exceed that figure." J.A.M.S. Guide to Dispute Resolution Clauses for Commercial Contracts, at p. 5.  As discussed above, the parties intended to use the Streamlined Rules to arbitrate fee calculation disputes in which less than $250,000 was at stake.

Indeed, the minimal procedures provided under the Streamlined Rules, as well as the fast-paced schedule, demonstrate that the Streamlined Rules were intended to cover only small dollar disputes.  For example, unlike the Comprehensive Rules, the Streamlined Rules do not provide for the taking of depositions and only provide for *14 days* of discovery.  *See* Comprehensive Rule 17(b); Streamlined Rule 13.  Under the Streamlined Rules, parties are given a mere week to respond to claims – whereas the Comprehensive Rules allow for twice this time. *Compare* Streamlined Rule 7, *with* Comprehensive Rule 9.  The Streamlined Rules, again unlike

WL 1558866, *1 (N.Y. City Ct. 2007) (notwithstanding that "New York public policy favors enforcement of contracts for arbitration . . . , an agreement to arbitrate must be clear and unambiguous, and not dependent upon subtleties in the agreement" (internal citations omitted)); *see also Bank of New York v. UBS Warburg LLC*, 4 A.D.3d 112, 115, 774 N.Y.S.2d 1, 3 (1st Dep't. 2004) ("Nor does the fact that the arbitration clause contained broad 'all controversies' language change the fact that Bank of New York did not agree to arbitrate every action taken by any department of the bank with UBS. . . . [T]o the extent that a customer agreement was ambiguous, it should be construed against the party that drafted it.").  Here, the Agreement was originally drafted by APC and executed on APC letterhead. See Maddox Decl. ¶7 (Exhibit B – the Agreement).  Hence, under New York law, any ambiguity concerning the scope of the reach of the arbitration provision must be resolved in favor of Wynn.  *Accord Anvui, LLC v. G.L. Dragon, LLC*, 123 Nev. 212, 215-16, 163 P.3d 405, 407 (2007) ("[A]mbiguity, moreover, should be construed against the drafter.")

13

1   the Comprehensive Rules, neither call for a preliminary conference (*see* Comprehensive Rule 16),

2   nor provide the option for the parties to agree to an appeal procedure. *See id.* Rule 34. Finally,

3   under the Streamlined Rules, the parties are only given the choice of three arbitrators with the

4   ability to strike one of them, yet under the Comprehensive Rules parties are given five arbitrators

5   and are able to strike two. *Compare* Streamlined Rule 12, *with* Comprehensive Rule 15.

6        While any arbitration offers parties simplified procedures to resolve their disputes, the

7   Streamlined Rules represent a form of no-frills arbitration that, according to the drafters of the

8   Rules, provides "expedited process with minimal discovery and less formality" designed to

9   quickly resolve disputes of a relatively defined and predictable nature.   It is not credible that the

10  parties would have intended to submit an amorphous and unforeseen claim, purported for tens of

11  millions of dollars, such as the one that APC now asserts, to this extreme form of expedited

12  dispute resolution.

13       Forcing Wynn to arbitrate this massive claim through arbitration, particularly arbitration

14  conducted in accordance with the Streamlined Rules – an "expedited process with minimal

15  discovery and less formality" – would be "fundamentally at war with the foundational FAA

16  principle that arbitration is a matter of consent." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,

17  (08-1198), Slip. op. at 20 (U.S. April 27, 2010).[2]

18       **B.    This Court Is Authorized To Stay The Pending Arbitration.**

19       Because the Federal Arbitration Act ("FAA") supplants only those state laws inconsistent

20  with its express provisions, Nevada's Uniform Arbitration Act (NRS 38.206 *et seq.*) provides the

21  relevant framework for the Court's analysis. *See Societe Generale de Surveillance v. Raytheon*

22  *European Mgmt. Sys. Co.*, 643 F.2d 863, 868 (1st Cir. 1981). Under Nevada law, consistent with

23  the FAA, when a dispute arises as to whether parties have agreed to arbitrate, the court, as a

24  threshold matter, must determine whether an arbitrable controversy exists. *Id.*  Specifically,

25  NRS 38.219 provides, in pertinent part:

26

27  ———————————
        [2]     In the unlikely event the Court determines that APC's claim should be arbitrated,
28  the Court should order that such arbitration be conducted in accordance with the Comprehensive
    Arbitration Rules rather than the Streamlined Rules.

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169
702.214.2100

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169
702.214.2100

1    If a party to a judicial proceeding challenges the existence of, or

2    claims that a controversy is not subject to, an agreement to arbitrate, the arbitral proceeding may continue pending final resolution of the

3    issue by the court, unless the court orders otherwise.

4 NRS 38.219(4).   NRS 38.221, captioned "Motion to compel or stay arbitration," further

5 authorizes this Court to summarily decide the issue of whether there is a valid agreement to

6 arbitrate a particular dispute. NRS 38.221 provides in relevant part that:

7    (2) On motion of a person alleging that an arbitral proceeding has been initiated or threatened but that there is no agreement to

8    arbitrate, the court shall proceed summarily to decide the issue.

9 NRS 38.221(2)-(3).[3]

10   Thus, the Court has the discretion to stay an arbitration proceeding while it determines

11 whether or not there is an arbitrable dispute. *See Graber v. Comstock Bank*, 111 Nev. 1421, 1430,

12 905 P.2d 1112, 1117 (1995) ("The courts, rather than arbitrators, are generally the proper forum

13 to decide whether a dispute must be arbitrated. . . . [A]rbitrability is usually a question of

14 contractual construction and because contractual construction is a question of law, this court can

15 conduct its own independent review.").   The United States Supreme Court has recognized as

16 much, holding that "whether or not the company was bound to arbitrate, *as well as what issues it*

17 *must arbitrate*, is a matter to be determined by the Court on the basis of the contract entered into

18 by the parties." *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) (quoting

19 *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964)) (emphasis added).

20

21

22  [3] Consistent with Nevada law, the FAA provides that a court shall not order

23 arbitration unless it is "satisfied that the making of the agreement for arbitration . . . is not in issue." 9 U.S.C. § 4. Although the FAA does not expressly authorize courts to stay arbitration,

24 various federal courts have recognized that such power is implied by several provisions of the FAA. Where the parties have not agreed to submit a dispute to arbitration, a court's power to stay

25 arbitration is the necessary counterpart to its power to compel arbitration when an agreement to arbitrate is present. *See Societe Generale*, 643 F.2d at 868 ("To allow a federal court to enjoin an

26 arbitration proceeding which is not called for by the contract interferes with neither the letter nor the spirit of this [the FAA]. Rather, to enjoin a party from arbitrating where an agreement to

27 arbitrate is absent is the concomitant of the power to compel arbitration where it is present."); *see also Satcom Int'l Partners v. Orbcomm Int'l Partners*, 49 F. Supp. 2d 331, 342 (S.D.N.Y. 1999)

28 (noting that, under § 4 of the FAA, a federal court has the concomitant power to stay arbitration where arbitration is inappropriate).

C.    **Wynn Will Be Severely Prejudiced Without A Stay.**

Numerous courts have held that a party would suffer irreparable injury if required to submit to arbitration a contractual dispute that it had never agreed to arbitrate. *See Textile Unlimited v. A..BMH & Co.*, 240 F.3d 781, 788 (9th Cir. 2001); *Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 985 (2d Cir. 1997) (holding that time and resources expended in arbitration constitutes irreparable injury since such harm is not compensable by any monetary award of attorneys' fees or damages pursuant to provisions of the FAA); *Satcom Int'l Partners*, 49 F. Supp. 2d at 342 (holding that any costs incurred in the arbitration proceedings could not be recouped and therefore constitutes irreparable injury).

If the Arbitration is not stayed, then inevitably a lone arbitrator will shortly rule on the merits of APC's claims.  If the ruling is adverse, Wynn will have limited grounds for appeal. *See World Group Sees v. Tiu*, 2003 U.S. Dist. LEXIS 25819 (D. Cal. 2003) ("Forcing Plaintiff to arbitrate under these circumstances would constitute irreparable harm."); *see also Chicago Sch. Reform Bd. of Trustees v. Diversified Pharm. Servs., Inc.*, 40 F. Supp. 2d 987, 996 (N.D. III. 1999) ("Forcing a party to arbitrate a matter that the party never agreed to arbitrate, regardless of the final result through arbitration or judicial review, unilaterally deprives the party of its right to select the forum in which it wishes to resolve disputes."); *Maryland Cas. Co.*, 107 F.3d at 985 ("[T]he time and resources . . . expend[ed] in arbitration is not compensable by any monetary award of attorneys' fees or damages pursuant to the provisions of the [FAA].").

Accordingly, if Wynn is compelled to arbitrate before its contractual rights and duties are ascertained, serious prejudice would result.

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169
702.214.2100

16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**V.     CONCLUSION**

Based upon the foregoing and accompanying papers, Wynn respectfully requests that this Court grant its Application and grant any other relief that the Court deems just and proper.

DATED this 16th day of May, 2010.

PISANELLI BICE PLLC

By:  ___/s/ James J. Pisanelli___
James J. Pisanelli, Esq., Bar No. 4027
Debra L. Spinelli, Esq., Bar No. 9695
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169

and

Randy M. Mastro, Esq.
Adam H. Offenhartz, Esq.
David J. Kerstein, Esq.
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, New York  10166-0193

Attorneys for Wynn Resorts, Limited

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169
702.214.2100

17

1

## CERTIFICATE OF SERVICE

2      I HEREBY CERTIFY that I am an employee of PISANELLI BICE PLLC, and that on this

3  16th day of May, 2010, I caused to be sent via email a true and correct copy of the above and

4  foregoing **WYNN RESORTS, LIMITED'S EMERGENCY MOTION FOR STAY OF**

5  **ARBITRATION PROCEEDINGS** to the following:

6

7  Frederick S. Gold, Esq.
   SHIPMAN & GOODWIN

8  300 Atlantic Street
   Stamford, CT  06901-3522

9  *Facsimile:* 203.324.8199

10

11 Ms. Mindi Merritt
   Business Manager

12 J.A.M.S.
   2300 West Sahara Avenue, Suite 900

13 Las Vegas, NV  89102
   *Facsimile:* 212.351.5219

14

15                                        /s/ Kimberly Peets
                                   An employee of PISANELLI BICE PLLC

16

17

18

19

20

21

22

23

24

25

26

27

28

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169
702.214.2100

# DECLARATION

# DECLARATION

1   **DECL**
    James J. Pisanelli, Esq., Bar No. 4027
2   jjp@pisanellibice.com
    Debra L. Spinelli, Esq., Bar No. 9695
3   dls@pisanellibice.com
    PISANELLI BICE PLLC
4   3883 Howard Hughes Parkway, Suite 800
    Las Vegas, Nevada 89169
5   Telephone:  702.214.2100
    Facsimile:  702.214.2101
6
    Randy M. Mastro, Esq. (*pro hac vice motion forthcoming*)
7   Adam H. Offenhartz, Esq. (*pro hac vice motion forthcoming*)
    David J. Kerstein, Esq. (*pro hac vice motion forthcoming*)
8   GIBSON, DUNN & CRUTCHER LLP
    200 Park Avenue, 47th Floor
9   New York, New York  10166-0193
    Telephone:  212.351.4000
10  Facsimile:  212.351.5272
11  Attorneys for Wynn Resorts, Limited
12                          **DISTRICT COURT**
13                       **CLARK COUNTY, NEVADA**
14
15  WYNN RESORTS, LIMITED, a          CASE NO: A-10-616392-B
    Nevada corporation                Dept. No.: XI
16
              Plaintiff,
17
         v.                           **DECLARATION OF MATT MADDOX IN**
18                                    **SUPPORT OF MOTION TO STAY**
    ATLANTIC-PACIFIC CAPITAL, INC., a  **ARBITRATION**
19  Connecticut corporation
20            Defendant.
21
22
23       I, Matt Maddox, declare:
24       1.      I am Chief Financial Officer and Treasurer of Wynn Resorts, Limited ("Wynn" or
25  "Plaintiff") a Nevada corporation with its principal place of business in Las Vegas, Nevada.  I am
26  duly authorized to make this declaration on behalf of Wynn.  I submit this declaration in support
27  of Wynn's motion to stay the arbitration initiated by Atlantic-Pacific Capital, Inc. ("APC" or
28

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

1

1   "Defendant") on May 3, 2010, purportedly pursuant to an agreement entered into by the parties on

2   March 30, 2009 (the "Agreement").

3       2.      The matters stated herein are based on my personal knowledge and my review of

4   the exhibits attached hereto.

5       3.      Wynn was awarded a concession to operate casinos in Macau, China in 2002. The

6   concession was signed in June 2002. Wynn formed Wynn Macau, SA ("Wynn Macau") to hold

7   the concession and to develop, own and operate the destination casino gaming and entertainment

8   resort facilities in Macau. In 2006, after four years of development and construction, Wynn

9   Macau opened the Wynn Macau Casino for business.

10      4.      Beginning in 2007, Wynn Macau entered into discussions relating to a potential

11  initial public offering (the "IPO"). Wynn retained various professionals to assist with the IPO,

12  including JP Morgan and UBS Securities. APC was not involved in any way.   In September,

13  2009, Wynn Macau announced the details of its IPO wherein it expressed its intention to sell

14  approximately 25% of its existing interest in Wynn Macau. A true and correct copy of Wynn

15  Macau's Offering Prospectus, dated September 24, 2009, is attached hereto as Exhibit A. In

16  October, 2009, the IPO was completed in accordance with the many complex rules and

17  regulations of the Hong Kong exchange. The Wynn Macau IPO was concluded without any

18  discussion or participation of APC as it was never anticipated that APC's services would relate, in

19  any way, to any existing Wynn business. Indeed, under the stringent rules of the Hong Kong

20  exchange, any involvement by APC would have had to be disclosed in the Offering Prospectus.

21  And as is evident from the Offering Prospectus, APC played no role in the IPO, in sharp contrast

22  to the various banks listed in the Prospectus.

23      5.      Wynn was introduced to APC in early 2009 while Wynn was discussing

24  opportunities that had presented themselves in the United States as a result of the financial

25  collapse of United States capital markets in the fall of 2008. This effort was totally separate and

26  apart from any of Wynn's operations in China.   Wynn and APC discussed acquisitions of

27  distressed debt, equity and assets of United States gaming companies that were experiencing

28  financial trouble as a result of the collapse.

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

2

1      6.     APC worked with Wynn to develop a plan that focused on the potential acquisition

2 of three Nevada properties. The Nevada properties were in particular distress as they had capital

3 demands, debt maturities, and an ongoing business dispute.

4      7.     On March 30, 2009, three years after the Wynn Macau Casino opened, APC and

5 Wynn entered into the Agreement, whereby APC agreed to become Wynn's "exclusive global

6 placement agent" in connection with raising equity capital for a new Wynn Investment Vehicle

7 that had the explicit "purpose of acquiring, directly or indirectly, interests in gaming and

8 hospitality assets or related securities," specifically the distressed Nevada properties. A true and

9 correct copy of the Agreement, dated March 30, 2009, is attached hereto as Exhibit B. As an

10 existing (rather than a to-be-formed or to-be-acquired) and already wholly owned gaming and

11 hospitality asset, the Wynn Macau Casino was simply unrelated to, and unaffected by, the

12 Agreement. The parties at no point discussed including preexisting assets, like the Wynn Macau

13 Casino, within the ambit of the Agreement.

14      8.     APC prepared marketing materials identifying the specific Nevada properties. All

15 discussions among Wynn, APC, and any potential investors were focused on those opportunities.

16 At no time were existing Wynn assets or entities included in discussions with either APC or

17 potential investors.

18      9.     The Agreement contained, among its numerous provisions, a "Miscellaneous"

19 provision, Section 5. *See id.* Subsection (g) of this provision outlined the parties understanding

20 regarding how disputes related to the Agreement's numerous fee and expenses provisions would

21 be resolved. *See id.* As the Agreement shows, it was the parties' intent that these disputes be

22 resolved in arbitration, and in the case of a dispute involving an amount less than $250,000,

23 arbitration conducted pursuant to J.A.M.S.' Streamlined Rules. *See id.* Wynn has a long-standing

24 hostility to arbitration for significant commercial relationships and would never have entered into

25 an arbitration agreement with APC that covered anything more than calculation disputes.

26     10.    APC initially introduced Wynn to one investor interested in investing with Wynn

27 in distressed Nevada properties. However, such investment never took place. Significantly, the

28 Nevada properties' situation improved, and the owner of the properties was able to raise

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

3

1 │ significant capital. Notably, ownership in those properties has not changed. Wynn ceased active

2 │ discussions with APC and potential investors in early summer of 2009 because the sought-after

3 │ opportunities were no longer available. There was no further activity as it seemed that the market

4 │ had begun to stabilize. By the fall of 2009 APC had ceased all marketing efforts under the

5 │ Agreement.

6 │      11.    Wynn formally terminated the Agreement on December 18, 2009. A true and

7 │ correct copy of the Termination Letter, dated December 18, 2009, is attached hereto as Exhibit C.

8 │      12.    Almost five months after Wynn formally terminated the Agreement, on May 3,

9 │ 2010, APC commenced a "streamlined" J.A.M.S. arbitration against Wynn, claiming that it was

10 │ entitled to a share of the proceeds raised by Wynn Macau's unrelated IPO. A true and correct

11 │ copy of APC's Demand for Arbitration, dated May 3, 2010, is attached hereto as Exhibit D.

12 │ Currently, APC's improper arbitration is progressing quickly. On May 11, 2010, Wynn received a

13 │ letter from J.A.M.S. requesting response to proposed arbitrators by May 21, 2010 or, if no

14 │ response is made, deeming any objections waived. A true and correct copy of the

15 │ Commencement of Arbitration Letter, dated May 11, 2010, is attached hereto as Exhibit E. A

16 │ stay of arbitration is necessary so that Wynn is not forced to defend itself against a multi-million

17 │ dollar claim that is not subject to arbitration in an arbitration conducted in a manner deemed

18 │ appropriate for disputes hundreds of times smaller than what APC is seeking.

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

Case 2:10-cv-00722-KJD-VCF    Document 1    Filed 05/17/10    Page 49 of 50

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___5/16/10___        _____

       (date)                   (signature)

1

## CERTIFICATE OF SERVICE

2      I HEREBY CERTIFY that I am an employee of PISANELLI BICE PLLC, and that on this

3  16th day of May, 2010, I caused to be sent via facsimile a true and correct copy of the above and

4  foregoing **DECLARATION OF MATT MADDOX IN SUPPORT OF MOTION TO STAY**

5  **ARBITRATION** to the following:

6

7  Frederick S. Gold, Esq.
   SHIPMAN & GOODWIN
8  300 Atlantic Street
   Stamford, CT  06901-3522
9  *Facsimile:* 203.324.8199

10 Terry J. Care, Esq.
   McDONALD CARANO WILSON
11 2300 West Sahara Avenue, #1000
   Las Vegas, NV  89102
12 *Facsimile:* 873.9966

13 Ms. Mindi Merritt
   Business Manager
14 J.A.M.S.
   2300 West Sahara Avenue, Suite 900
15 Las Vegas, NV  89102
   *Facsimile:* 212.351.5219
16

17                                              /s/ Kimberly Peets

18                                      An employee of PISANELLI BICE PLLC

19

20

21

22

23

24

25

26

27

28

PISANELLI BICE
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169